## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FORSYTH MEDICAL CENTER** | ) |
| **333 Silas Creek Parkway** | ) |
| **Winston-Salem, NC 27103** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **KATHLEEN SEBELIUS,** | ) |
| **SECRETARY, DEPARTMENT OF** | ) |
| **HEALTH AND HUMAN SERVICES,** | ) |
| **200 Independence Avenue, S.W.** | ) |
| **Washington, D.C. 20201** | ) |
| | ) |
| | ) |
| **Defendant** | ) |
| | ) |

## ORIGINAL COMPLAINT

NOW COMES the Plaintiff, by and through its undersigned attorneys, and for its complaint against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, states as follows:

### I.  JURISDICTION AND VENUE

1.  This is a civil action brought to obtain judicial review of a final agency decision rendered by the Medicare Provider Reimbursement Review Board ("PRRB").

2.  This action is timely filed pursuant to 42 U.S.C. § 1395oo(f)(1) within 60-days of the Plaintiff's receipt of the PRRB's final decision with regard to the controversy at issue in this complaint.  That decision was rendered on January 7, 2013 and received by the hospital on January 11, 2013.

3. The instant action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 551 et seq.) hereinafter referred to as the "Medicare Act" or the "Act", which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

4. This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. § 1331 (federal question).

5. The total amount of payment due to Plaintiff at issue in this complaint exceeds $10,000.00.

6. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391(e).

7. This Court has authority to grant the relief requested pursuant to 42 U.S.C. § 1395oo(f), 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202.

## II.  PARTIES

8. Forsyth Medical Center d.b.a. Forsyth Memorial Hospital (hereinafter, "Plaintiff") is an acute care, inpatient hospital located in Winston-Salem, North Carolina and is a subsidiary of Novant Health, Inc., which is a nonprofit corporation exempt from federal income taxation as a charitable organization.  During the relevant period, Plaintiff was certified as a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u).

9. Defendant, Kathleen Sebelius, Secretary of the Department of Health and Human Services (hereinafter referred to as the "Secretary"), or her predecessors in office, is the federal officer responsible for the administration of the Medicare Program pursuant to the

Medicare Act.  The Secretary has delegated administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS").

### III.  MEDICARE PAYMENT

10. The Medicare Act establishes a system of health insurance for the aged and the disabled. Under the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his/her behalf for inpatient and outpatient hospital services provided to him/her by a hospital participating in the Medicare Program as a "provider of services."  As such, the Secretary reimburses health care providers, including hospitals, for services provided Medicare patients.  42 U.S.C. § 1395 to 1395ccc.  Medicare reimbursement is typically handled by fiscal intermediaries, such as insurance companies, who make interim payments to health care providers, then determine the proper amount of reimbursement for the entire fiscal year.  42 U.S.C. § 1395h(a). A health care provider seeking reimbursement must submit an annual cost report to its fiscal intermediary. 42 C.F.R. § 413.20(a)-(b); 413.24(f).  The fiscal intermediary then audits the cost report, determines the reimbursement amount to which the provider is entitled under the statute and regulations, and issues a Notice of Amount of Medicare Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803.

11. The fiscal intermediary that acted on behalf of the Secretary with respect to Plaintiff was AdminaStar Federal, Inc. (hereinafter, "Intermediary").

12. Pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(2), a provider meeting certain jurisdictional prerequisites may appeal an NPR, within 180 days of its issuance, by requesting a hearing before the Provider Reimbursement Review Board ("PRRB").  In addition, Medicare

regulations allow a fiscal intermediary to reopen a provider's cost report and issue a revised NPR within three years of issuing the original NPR.  42 C.F.R. § 405.1885.

13. In exercising its authority to conduct hearings, the PRRB must comply with all the provisions of the Medicare Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator of the CMS.  42 C.F.R. 405.1867.

14. A decision of the PRRB is final unless Secretary, on the Secretary's own motion, and within 60 days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision.  42 U.S.C. § 1395oo(f)(1).

15. A provider has the right to obtain judicial review of any final decision of the PRRB, including a decision of the PRRB declining to assert jurisdiction, or any reversal, affirmation, or modification by the Secretary.  42 U.S.C. § 1395oo(f)(1).

## IV. THE MEDICARE DISPROPORTIONATE SHARE HOSPITAL ADJUSTMENT

16. Under the prospective payment system ("PPS"), Medicare's payments for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments.  42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.  One of these adjustments, known as the disproportionate share hospital, or "DSH" adjustment, is available to PPS hospitals, such as the Plaintiff, that qualify by meeting certain criteria generally designed to target larger hospitals which serve a disproportionate share of low-income patients.  42 U.S.C. §1395ww(d)(5)(F).

17. A qualifying hospital must have a certain "disproportionate patient percentage" to qualify for DSH payments.

18. Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage (DPP)." 42

U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. § 1395ww(d)(5)(F)(vi). Hospitals whose DSH percentages meet certain thresholds receive an adjustment that results in increased PPS payments for inpatient hospital services. 42 U.S.C. § 1395ww(d)(5)(F)(ii).

19. The Medicare fraction's numerator is the number of inpatient days for patients who were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of inpatient days for patients entitled to Medicare Part A. Id.  This case involves this first fraction, which is hereinafter referred to as the "SSI/Medicare Fraction."

20. The numerator of the Medicaid low income proxy (the Medicaid fraction) is the number of hospital inpatient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the hospital's inpatient days for such period. Id.  The Medicaid fraction is not directly at issue in this case.

21. In a HCFA Ruling known as HCFAR 97-2, dated February 27, 1997, the Administrator of CMS provided that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients eligible for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days.  This is known as the Secretary's "eligible days" policy.

22. By its terms, HCFAR 97-2 was binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic

Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

23. HCFAR 97-2 also explicitly provided that it was effective for "all cost reporting periods beginning on or after February 27, 1997," but that the ruling could not be used as a basis for reopening closed cost reports (the "reopening prohibition").

24. The reopening prohibition was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth Medical Center ("Monmouth") v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001). The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

25. The United States Court of Appeals for the District of Columbia subsequently held in *In re Medicare Reimbursement Litig., Leavitt v. Baystate Health Systems*, 414 F.3d 7 (D.C. Cir. 2005)(*cert denied*, 547 U.S. 1054 (April 3, 2006)): "the Secretary and intermediaries [have a 'mandatory duty'], enforceable by mandamus, to reopen closed Cost Reports even for providers that not only failed to appeal determinations by their intermediaries, but also failed even to seek reopening of those determinations within three years, as

required by the only regulation that allows for reopening at the behest of a provider, 42 C.F.R. § 405.1885(a)."

26. The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

27. In *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, as amended, 587 F. Supp. 2d 37, 44 (D.D.C. 2008) ("*Baystate*"), the United States District Court for the District of Columbia determined that the Secretary was not using the "best available data" to determine providers' SSI fractions. 545 F. Supp. 2d at 57-58.   In order to correct the Secretary's errors, the Court specifically ordered the Secretary to:

   a.  Use patient social security numbers in the data matching process. 587 F. Supp. 2d at 40;

   b.  Use updated SSA records that become available before the time that the cost report at issue is settled; 545 F. Supp. 2d at 58.

   c.  Forced pay SSI records; *Id.* and

   d.  Inactive SSI records. *Id.*

28. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries or Medicare Administrative Contractors. Fiscal intermediaries determine payment amounts due the providers under

Medicare law and regulations.  42 U.S.C. § 1395h, 42 C.F.R. §§ 413.20(b) and 413.24(b). Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

29. At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. § 405.1803.

30. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (PRRB) or (Board) within 180 days of the receipt of the NPR. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

31. An NPR may be reopened in accordance with the provisions of 42 C.F.R. § 405.1885. Pursuant to the version of the regulation in effect as of October 2005, the version in effect at all times relevant to the notice of reopening in this case, held that "no such determination or decision may be reopened after [the three year period measured from the date of the reimbursement decision at issue] except in case of fraud. *See* 42 C.F.R. 405.1885 (a) and (d).

32. The Secretary, however, has the authority to require the intermediary to reopen a cost report, even beyond the three-year reopening window, in order to "implement, for the same intermediary determination or intermediary decision … (ii) A final nonappealable court judgment; or (iii) An agreement to settle and administrative appeal or a lawsuit."

33.  Under the version of 42 C.F.R. 405.1889 in effect as of October 2010, the version in effect at all times relevant to the revised NPRs issued in this case, any revision made pursuant to Section 405.1885 must be considered a separate and distinct determination or

decision to which appeal rights, among others, attached; but only those matters that were specifically revised in a revised determination or decision were within the scope of any appeal of the revised determination or decision, and any matter that was not specifically revised (including any matter that was reopened but not revised) was not permitted to be considered in any appeal of the revised determination or decision.

### V. SPECIFIC FACTS PERTAINING TO THE HOSPITAL'S CLAIM

34. On April 14, 2004, following the decision in *Monmouth, supra,* the parties hereto entered into a settlement agreement which instructed the Fiscal Intermediary to issue a Notice of Reopening for the purposes of applying HCFAR 97-2 to the hospital's eligible but unpaid days.

35. The settlement agreement specifically prohibited the Intermediary from reopening and recalculating the number of Medicaid paid days.

36. The Intermediary issued the Notice of Reopening for FY 1995 on August 16, 2006, and it issued the Notice of Reopening for FY 1996 on August 18, 2006. Both notices of reopening specifically stated that the Cost Reports were being reopened in order to implement the April 14, 2004 settlement agreement, stating "[W]we are hereby reopening your cost report to revise the number of Medical eligible but unpaid patient days used in the DSH calculation in accordance with the Settlement Agreement between Forsyth Memorial Hospital and the U.S. Department of Health and Human Services related to Civil Case NO. 02-1900 (PLF)."

37. The Revised Notice of Program Reimbursement (RNPR) for the hospital's FY 1995 Cost Report was issued on August 23, 2011, and the RNPR for the 1996 Cost Report was issued on July 26, 2011.

38. Instead of merely adjusting the Plaintiff's Medicaid Eligible Days calculation, the Intermediary also adjusted the Plaintiff's Medicaid "paid day" calculation, in contravention of the settlement agreement and 42 C.F.R. § 405.1885, which prohibits reopenings beyond three years from the date of the Intermediary's determination at issue.

39. Due to the passage of time and the finality of the prior "paid day" calculation, the hospital no longer had the records to support the "paid day" calculation that was included in the original Notice of Program Reimbursement, and therefore Fiscal Intermediary made a downward adjustment of the DSH calculation for both FY 1995 and FY 1996 cost reports.

40. Instead of merely adjusting the Plaintiff's Medical Eligible but Unpaid Days calculation, the Intermediary also used a different SSI percentage, which was provided to the Intermediary by CMS. However, the process CMS used to compile and calculate the SSI data failed to comply with the federal district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, as amended, 587 F. Supp. 2d 37, 44 (D.D.C. 2008).  Among other things, the methodology used did not use Social Security numbers in the data matching process, fails to reasonably capture beneficiaries who have been retroactively awarded SSI benefits, and fails to credit the hospital for beneficiaries for whom SSA did not have a home address.  As a result, the hospital's SSI% did not include all of the hospital's patients who were entitled to SSI benefits, which resulted in a lower DSH adjustment payment.

41. The SSI/Medicare Fraction that the Intermediary used to calculate the Plaintiff's DSH adjustment included only "paid days" in the numerator of the SSI/Medicare Fraction,

while it included both paid and eligible but unpaid days in the denominator of the fraction, resulting in a smaller DSH adjustment payment.

42. The SSI/Medicare Fraction that the Intermediary used to calculate the Plaintiff's DSH adjustment included both Medicare Part A and Medicare Part B days in the numerator of the SSI/Medicare Fraction, resulting in a smaller DSH adjustment payment.

43. The RNPR failed to include all eligible but unpaid days, in the calculation of the Medicaid Low Income Proxy, resulting in a lower DSH adjustment payment.

44. The RNPR failed to include "Dual Eligible" days (covering patients who are entitled to both Medicare and Medicaid benefits) in the Medicaid Low Income Proxy, which resulted in a lower DSH adjustment payment.

45. The RNPR failed to include "Exhausted Benefit" days (patient days for Medicare Part A patients whose Medicare Part A benefits were exhausted, but who were still eligible for Medicaid) in the Medicaid Low Income Proxy, which resulted in a lower DSH adjustment payment.

46. The Fiscal Intermediary included non-covered inpatient hospital days in the SSI/Medicare Fraction, including Medicare Secondary Payer, Exhausted Benefit and other similar days.

## VI. COUNT I: BREACH OF SETTLEMENT AGREEMENT, VIOLATION OF ADMININISTRATIVE PROCEDURES ACT AND MANDAMUS RELIEF

47. The Plaintiff reavers and incorporates by reference here each of the allegations in the above enumerated paragraphs as is they were specifically restated here. The following assertions are made in addition or in the alternative to all other assertions herein

48. As this Court established in *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001) and *In re Medicare Reimbursement Litig., Leavitt v. Baystate Health Systems*,

414 F.3d 7 (D.C. Cir. 2005)(*cert denied*, 547 U.S. 1054 (April 3, 2006)): the Secretary and intermediaries had a 'mandatory duty,' enforceable by mandamus, to reopen closed Cost Reports in order to include Medicaid Eligible but Unpaid Days in their DSH Adjustment payment, even for providers that not only failed to appeal determinations by their intermediaries, but also failed even to seek reopening of those determinations within three years, as required by the only regulation that allows for reopening at the behest of a provider.

49. In addition to that mandatory reopening duty, under the terms of the settlement agreement that resulted in the stipulation of dismissal in Civil Action No. 02-1900 (PLF), the Secretary, by and through its intermediary, was prohibited from reopening and re-calculating <u>anything</u> but the Hospital's Medicaid Eligible But Unpaid Days calculation.

50. By revising the Plaintiff's Medicaid Paid Days calculation in the course of reopening the Plaintiff's 1995 and 1996 cost reports, the Secretary, by and through its fiscal intermediary, breached the settlement agreement that resulted in the stipulation of dismissal entered into in Civil Action No. 02-1900.

51. The Secretary, by and through its fiscal intermediary, additionally breached the settlement agreement by failing to include all Medicaid Eligible but Unpaid Days in the Hospital's Medicaid Low Income Proxy.

52. The Secretary's actions also constituted a violation of the standards set forth in 5 U.S.C. § 706 (2) of the Administrative Procedures Act.

53. As a result of the Secretary's unlawful conduct, Plaintiff has suffered and will continue to suffer considerable economic damages.

**VII.  <u>COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT</u>**

54. The Plaintiff reavers and incorporates by reference here each of the allegations in the above enumerated paragraphs as is they were specifically restated here. The following assertions are made in addition or in the alternative to all other assertions herein

55.  The following assertions are made in addition or in the alternative to all other assertions herein.

56. By reopening and adjusting any factor other than the Plaintiff's Medicaid Eligible but Unpaid Days amount, as used in the Medicaid Low Income Proxy, the Fiscal Intermediary acted in violation of 42 C.F.R. § 405.1885, which prohibits reopening of any issue beyond three years from the date of the relevant reimbursement determination.

57. The Provider Reimbursement Review Board dismissed the Plaintiff's appeals for lack of jurisdiction on the grounds, allegedly pursuant to 42 C.F.R. § 405.1889, that it did not have any jurisdiction over items that were not specifically adjusted in the Revised NPR; this was despite the fact that all of the Cost Report elements about which the Plaintiff appealed had been adjusted in the Revised Notice of Program Reimbursement.

58. The SSI/Medicare Fraction that the Intermediary used to calculate the Plaintiff's DSH adjustment included only "paid days" in the numerator of the SSI/Medicare Fraction, while it included both paid and eligible but unpaid days in the denominator of the fraction, resulting in a smaller DSH adjustment payment.

59. The SSI/Medicare Fraction that the Intermediary used to calculate the Plaintiff's DSH adjustment included both Medicare Part A and Medicare Part B days in the numerator of the SSI/Medicare Fraction, resulting in a smaller DSH adjustment payment.

60. The RNPR failed to include all eligible but unpaid days, in the calculation of the Medicaid Low Income Proxy, resulting in a lower DSH adjustment payment.

61. The RNPR failed to include "Dual Eligible" days (covering patients who are entitled to both Medicare and Medicaid benefits) in the Medicaid Low Income Proxy, which resulted in a lower DSH adjustment payment.

62. The RNPR failed to include "Exhausted Benefit" days (patient days for Medicare Part A patients whose Medicare Part A benefits were exhausted, but who were still eligible for Medicaid) in the Medicaid Low Income Proxy, which resulted in a lower DSH adjustment payment.

63. The Fiscal Intermediary included non-covered inpatient hospital days in the SSI/Medicare Fraction, including Medicare Secondary Payer, Exhausted Benefit and other similar days.  Inclusion of these days in the SSI/Medicare Fraction is invalid because it is contrary to the plain language of the statute, and is also inconsistent with the Secretary's practice during the time periods relevant to this appeal and it is the result of an invalid retroactive rulemaking, according to *Northeast Hospital.*

64. All of the above mentioned conduct was in violation of the standards set forth in 5 U.S.C. § 706 (2) of the Administrative Procedures Act.

65. As a result of the Secretary's unlawful conduct, Plaintiff has suffered and will continue to suffer considerable economic damages.

**VIII. COUNT III: CONTINUED FAILURE TO USE BEST AVAILABLE DATA TO CALCULATE THE SSI FRACTION**

66. The Plaintiff reavers and incorporates by reference here each of the allegations in the above enumerated paragraphs as is they were specifically restated here. The following assertions are made in addition or in the alternative to all other assertions herein

67. The Secretary's computation of the SSI percentage is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C.

§706(2)(A), because it continues to fail to use "the most reliable data available to produce figures that can be considered sufficiently accurate" and otherwise fails to comply with the *Baystate* decision, including:

    a.   The failure to use Social Security numbers in the matching process.

    b.   The revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status.

    c.   Under the terms of the Ruling, individuals are "entitled" to SSI only when they actually receive a SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare.

    d.   Individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months, which the retroactive payment was intended to cover.

68. As a result of the foregoing deficiencies, the Plaintiff has suffered economic harm because the Providers' DPP and/or DSH adjustments were lower than that to which they are entitled under the law.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order:

1. Setting aside the PRRB's decision dismissing this matter for lack of jurisdiction;

2. Requiring the Secretary to recalculate the Plaintiff's 1995 and 1996 DSH Adjustments in accordance with the settlement agreement and/or the law;

3. Requiring the Secretary to pay to Plaintiff interest and legal fees and cost incurred by Plaintiff; and

4.  Granting such other relief as the Court may deem just and proper.

Respectfully Submitted,

Leslie D. Alderman III
ALDERMAN, DEVORSETZ & HORA, PLLC
1025 Connecticut Ave., NW
Suite 615
Washington D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@adhlawfirm.com